UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUANDA MORRISON,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | Case No. C11-936-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Ruanda Morrison seeks review of the denial of her Supplemental Security Income application. Ms. Morrison contends that the ALJ erred by (1) finding at step four that she could perform past relevant work as a telephone solicitor, (2) finding she had the residual functional capacity to perform sedentary work without specifying the frequency of her need to alternate sitting and standing, (3) finding at step five that she could perform other work, (4) finding Ms. Morrison not fully credible, and (5) failing to find her impairments meet or equal a listing. Dkt. 18. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Ruanda Morrison is currently 51 years old, has a high school degree, and has worked as a

REPORT AND RECOMMENDATION - 1

mechanic, cable and internet installer, salesperson, and sandwich maker.[1]  On August 24, 2007, she applied for benefits, alleging disability as of January 23, 2007.  Tr. 128.  Her application was denied initially and on reconsideration.  Tr. 67, 74.  The ALJ conducted a hearing and on December 29, 2009, issued a decision finding Ms. Morrison not disabled.  Tr. 7-29.  As the Appeals Council denied Ms. Morrison's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:**  Ms. Morrison had not engaged in substantial gainful activity since August 24, 2007.

**Step two:**  Ms. Morrison had the following severe impairments: degenerative joint disease of the bilateral knees; degenerative changes of the right ankle, status-post right ankle open reduction with internal fixation; early degenerative changes of the lumbar spine; depression; obesity; and alcohol abuse in current remission.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Ms. Morrison had the residual functional capacity to perform sedentary work as follows:  She is able to lift up to 20 pounds occasionally, to sit for up to 45 minutes at a time, but then must stand and move while working.  She is unable to climb.  She is able to kneel and stoop occasionally.  She is capable of simple and some complex tasks and is able to perform semi-skilled work.

**Step four:**  Ms. Morrison could perform past relevant work as a telephone solicitor.

**Step five:**  In the alternative, there exists a significant number of other jobs Ms. Morrison could perform.  Ms. Morrison is therefore not disabled.

Tr. 7-24.

---

[1] Tr. 35, 128, 156.
[2] 20 C.F.R. §§ 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

## III. DISCUSSION

### A. The ALJ's step four decision

Ms. Morrison argues that the ALJ erred by finding at step four that she could perform past relevant work as a telephone solicitor and she was thus not disabled. Dkt. 18 at 8. Specifically, Ms. Morrison argues that the ALJ failed to determine the specific vocational preparation for the job as Ms. Morrison actually performed it, failed to determine whether Ms. Morrison performed the job long enough to learn to do it, and failed to reconcile the residual functional capacity finding with the demands of the job.

At step four, an ALJ must determine whether a claimant has the residual functional capacity to perform her past relevant work. If a claimant can still do her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). A job qualifies as "past relevant work" if (1) the claimant performed the work in the past 15 years, (2) the work was substantial gainful activity, and (3) the work lasted long enough for the claimant to learn to do it. 20 C.F.R. § 416.960(b)(1).

In evaluating whether work is "substantial gainful activity," the primary consideration for a person who works as an employee (i.e., who is not self-employed) is the earnings the employee derived from the work activity. 20 C.F.R. § 416.974(a)(1). For work performed in 1998, there is a rebuttable presumption that the employee was engaged in substantial gainful activity if her monthly earnings averaged more than $500. 20 C.F.R. § 416.974(b)(2).

In evaluating the length of time it takes to learn how to do a job, the Dictionary of Occupational Titles ("DOT") provides that a job with a Specific Vocational Preparation ("SVP") score of 2 requires up to 1 month to learn to do it. DOT, Appx. C. A job with an SVP of 3 requires from 1 to 3 months to learn to do it. *Id.*

Mr. Morrison worked as a telephone solicitor in 1998, 11 years before the ALJ's

decision. The record shows that she earned $1,628.48 at that job. Tr. 145. She also worked at four other jobs that year, earning a total yearly income of $4,927.14. Tr. 145-46. With respect to her telephone solicitor job, Ms. Morrison testified: "I worked for them answering phones. Mostly it was to do sales for programs. Like, how you get those coupon books for a limited price or for people who just got bank card [sic], there's different services that are offered because they have a bank." Tr. 58.

The vocational expert testified that the telephone solicitor job was sedentary work with a SVP of 3, modified to 2. He explained:

> Based on the, the labor markets that we've found that occupation used to be where you had to memorize a script and the current employment for telephone solicitors is that they're either reading off a script that doesn't require memorization or there's a teleprompter they're reading off a computer screen. So the time required to learn this is reduced to a 2.

Tr. 60.

The ALJ found that Ms. Morrison could perform past relevant work as a telephone solicitor as generally performed. Tr. 23. This finding is not supported by substantial evidence because there is insufficient information in the record to conclude that Ms. Morrison's job as a telephone solicitor meets the requirements of past relevant work. Specifically, the record does not show that the work was substantial gainful activity or that it lasted long enough for Ms. Morrison to learn to do it.

With respect to the issue of substantial gainful activity, the record does not establish whether Ms. Morrison earned enough at this job for it to presumptively qualify as such. Given that she earned a total of $1,628.48 at this job, she would have had to have worked at the job for approximately three months or less to have average monthly earnings of more than $500. But the record does not show how long Ms. Morrison worked at the job. The Court also notes that

REPORT AND RECOMMENDATION - 4

Ms. Morrison's average monthly income from all jobs she worked at in 1998 was $410.60, below the presumptive level for substantial gainful activity. It is thus unclear if this job presumptively qualified as substantial gainful activity.[4]

With respect to the issue of learning to do the work, the record also does not establish whether the job lasted long enough for Ms. Morrison to learn to do it. The record does not show if Ms. Morrison performed this job at SVP 3, as it is classified in the DOT, or at SVP 2, as the vocational expert testified it is currently performed. Because Ms. Morrison performed this job over 10 years ago, it is likely that she performed the job at an SVP of 3.[5] In that case, she would have had to work at the job for one to three months to learn how to do it. But, again, the length of time she worked at this job is not in the record. Given the fact that she worked at four other jobs that year, it is quite possible that she worked at this job for a very short time. It is thus unclear if she worked at this job long enough to learn to do it.

The Court also notes that, assuming she performed the job at an SVP of 3, if she earned enough per month to meet the presumptive income level for substantial gainful activity, she may not have worked at the job long enough to learn to do it. Conversely, if she worked at the job long enough to have learned to do it, she may not have earned enough per month to meet the presumptive income level for substantial gainful activity. Although it may be the case that Ms. Morrison's work as a telephone solicitor meets the requirements for past relevant work, there is simply not enough information in the record to make this determination.

Because substantial evidence does not support a finding that Ms. Morrison's work as a

---

[4] The Commissioner points out in his response that earnings are a presumptive but not conclusive sign of whether a job is substantial gainful activity. Dkt. 22 at 12. However, there is nothing in the record at this time to rebut any presumption about Ms. Morrison's income from this job. If there is evidence to rebut a presumption that Ms. Morrison's work was not substantial gainful activity, the Commissioner shall have the opportunity to present that evidence on remand.

[5] The ALJ identified the job as having an SVP of 3. Tr. 23.

REPORT AND RECOMMENDATION - 5

telephone solicitor was past relevant work, the ALJ erred in finding her not disabled at step four. On remand, the ALJ should determine how long Ms. Morrison worked as a telephone solicitor, the amount of her average monthly earnings at this job, the SVP level at which she performed the job, and any other relevant information and, based on all this information, whether the job qualifies as past relevant work. The ALJ should then redo steps four and five of the five-step disability evaluation process as necessary, taking into consideration the remainder of this Report and Recommendation.

Because the ALJ made an alternate step-five finding, the Court will review the errors Ms. Morrison asserts with respect to that finding.

### B. The ALJ's residual functional capacity finding

Ms. Morrison argues that the ALJ erred in determining her residual functional capacity because the ALJ failed to specify the frequency of her need to alternate sitting and standing and failed to clarify how Ms. Morrison was to continue to work while standing and moving. Dkt. 18 at 14.

A claimant's residual functional capacity is the most she can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ must consider the limitations and restrictions caused by the claimant's medically determinable impairments and any related symptoms. Social Security Ruling ("SSR") 96-8p.

The need to alternate sitting and standing, when it cannot be accommodated by scheduled breaks and a lunch period, erodes the occupational base for sedentary work. SSR 96-9p. The extent of this erosion depends on the facts of the case, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *Id.* Accordingly, where a claimant needs to alternate sitting and standing, the residual functional capacity assessment

"must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.*

Here, the ALJ specified how long Ms. Morrison could sit before needing to stand (45 minutes), but did not specify how long she needed to stand up and move before returning to sitting. The ALJ also specified that Ms. Morrison would continue to work while standing and moving, but did not specify how she was to accomplish this—by stooping over a desk, as Ms. Morrison argues, or perhaps by working at a job that allows some work to be performed while standing.

The ALJ's failure to be sufficiently specific about Ms. Morrison's need to alternate sitting and standing and continue working while standing was in error. Because this residual functional capacity finding cannot support a finding about Ms. Morrison's ability to work, remand for clarification of this issue is appropriate. On remand, the ALJ should make specific findings as to how long Ms. Morrison must stand and move before returning to sitting and how she is to continue working while standing.

**C.     The ALJ's step five decision**

Ms. Morrison argues that the ALJ erred at step five by relying on vocational expert testimony that failed to address the effect of Ms. Morrison's additional limitations on the occupational base of sedentary work and that conflicted with the DOT and by relying on the Medical-Vocational Guidelines to find Ms. Morrison not disabled. Dkt. 18 at 15.

At step five, the Commissioner bears the burden of showing that the claimant can perform a significant number of jobs in the national economy, other than the claimant's past relevant work, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-

1100 (9th Cir. 1999). The Medical-Vocational Guidelines (the "grids") identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). Where the grids match a claimant's qualifications, they direct a finding of either disabled or not disabled. *Id.* Where the grids do not match a claimant's qualifications exactly, the ALJ can either use the grids as a framework to determine whether work exists that the claimant can perform, or, if the claimant has significant non-exertional limitations, rely on a vocational expert's opinion. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

Information provided by a vocational expert generally should be consistent with the DOT. SSR 00-4p. When there is a conflict between the vocational expert's testimony and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the vocational expert's testimony. *Id.*; *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). A vocational expert may provide such an explanation with information about jobs in the local, rather than the national, market, or with testimony matching the specific requirements of a job with the specific abilities and limitations of the claimant. *Massachi*, 486 F.3d at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ must explain in her decision how she resolved any conflict. SSR 00-4.

Here, the ALJ posed a hypothetical to the vocational expert based on the ALJ's residual functional capacity finding. The vocational expert testified that a person with this residual functional capacity could work as a parking lot attendant, a surveillance systems monitor, and a final assembler. He testified that the DOT classifies the parking lot attendant job as light work, but about half the jobs in Washington are actually performed at the sedentary level. He also testified that surveillance systems monitor and final assembler are sedentary jobs. He further

testified that his testimony was consistent with the DOT, with the exception of the information he gave about the parking lot attendant job. Tr. 61-62.

The ALJ found that if Ms. Morrison had the residual functional capacity to perform the full range of sedentary work, the grids would direct a finding of not disabled. The ALJ found, however, that her ability to perform sedentary work was impeded by additional limitations and thus the vocational expert's opinion was necessary to determine the extent to which these limitations erode the sedentary occupational basis. The ALJ noted the vocational expert's testimony that Ms. Morrison could perform the jobs specified above and found that the testimony was consistent with the DOT. The ALJ concluded that, based on the vocational expert's testimony, Ms. Morrison could perform other work and was therefore not disabled. Tr. 24.

A vocational expert's testimony must be based on a hypothetical that reflects all of a claimant's limitations or it has no evidentiary value. *Mathews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The description of the claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. Because the hypothetical used in this case did not fully account for Ms. Morrison's need to alternate sitting and standing as discussed above, the vocational expert's opinion cannot serve as substantial evidence to support a finding that Ms. Morrison can perform other work.

In addition, despite his testimony to the contrary, the vocational expert provided information that conflicted with the DOT without explanation. The vocational expert identified three sedentary jobs but did not explain how a person who could only sit for 45 minutes before needing to stand and move about could meet the requirements of the jobs. He also failed to explain how a person could stand and continue to work at these sedentary jobs. The vocational expert thus did not match the specific requirements of the jobs he identified with the specific

abilities and limitations of Ms. Morrison. The ALJ erred by failing to identify and resolve these conflicts between the vocational expert's testimony and the DOT.[6]

The Court concludes, however, that the ALJ did not err when she considered the fact that the grids would direct a finding of not disabled if Ms. Morrison could perform the full range of sedentary work. After making this finding, the ALJ relied on the vocational expert's opinion, not the grids, to make a step five finding. Although there were errors related to the vocational expert's testimony and the ALJ's step five finding, this procedure was not in error.

As stated above, remand is appropriate in this case. On remand, the ALJ should again obtain the testimony of a vocational expert. The ALJ should obtain a reasonable explanation from the vocational expert about any conflicts between the expert's opinion and the DOT and should explain how she resolved them in her opinion before relying on the vocational expert's opinion to make a step-five finding.

**D.     The ALJ's credibility analysis**

Mr. Morrison argues that the ALJ erred in finding her complaints of pain and other limitations not fully credible. Dkt. 18 at 18. The ALJ did not find that Ms. Morrison was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

---

[6] The Court notes, however, that the vocational expert did provide a reasonable explanation for the conflict between the DOT and his testimony that half the parking lot attendant jobs are sedentary and half are light by relying on his personal experience with the local job market. Tr. 62. This was a reasonable explanation for this conflict. The ALJ's reliance on this information was not in error.

REPORT AND RECOMMENDATION - 10

The ALJ gave several reasons for finding Ms. Morrison not fully credible. The ALJ found that the objective medical evidence did not warrant restrictions greater than those in the residual functional capacity finding. Tr. 18. Although lack of objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Ms. Morrison asserts that the ALJ improperly disregarded x-rays taken in August 2008. These x-rays showed moderately advanced degenerative changes at all three compartments of the right knee, early degenerative changes in the lower back, and degenerative changes in the right ankle status post internal fixation. Tr. 386-88. Rather than disregard them, the ALJ discussed these x-rays and found that, along with the other medical evidence, they supported a conclusion that Ms. Morrison could not perform the full range of sedentary work. Tr. 18. Although Ms. Morrison may disagree with the ALJ's assessment of the x-rays, where, as here, the ALJ's interpretation of the evidence is rational, the Court must uphold it. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ thoroughly discussed the medical evidence, noting where the objective evidence supported Ms. Morrison's complaints and where it did not. Tr. 15-18. Because the ALJ's interpretation of the medical evidence was rational, and because it was not the only reason he gave for finding Ms. Morrison not fully credible, the ALJ did not err in considering it.

The ALJ also found that Ms. Morrison's daily activities reflected high social functioning and fairly high cognitive functioning and showed that she was physically able to perform the exertional requirements in the residual functional capacity finding. Tr. 18-20. Contradictions between a claimant's reported activities and her asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that the evidence showed Ms. Morrison was noncompliant with her

REPORT AND RECOMMENDATION - 11

treatment, frequently missing or cancelling her appointments. Tr. 20. A lack of consistent treatment or failure to seek treatment can discredit credibility. *Burch*, 400 F.3d at 681.

Finally, the ALJ found that Ms. Morrison was inconsistent with her reporting about her drug and/or alcohol abuse. Tr. 20. An ALJ may consider ordinary techniques of credibility evaluation, such as the consistency of the claimant's statements. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

In sum, the ALJ had several valid reasons to find Ms. Morrison not fully credible. The Court notes that the ALJ gave credence to a good portion of Ms. Morrison's complaints and, consistent with these reports, found that Ms. Morrison's physical and mental impairments significantly limited her functioning. Tr. 15, 18. The ALJ's decision to not give full credence to Ms. Morrison's subjective complaints was well supported by clear and convincing reasons and should not be disturbed. The ALJ need not address Ms. Morrison's credibility on remand.

### E.     The ALJ's step three finding

Along with her argument about the ALJ's adverse credibility finding, Ms. Morrison asserts that substantial evidence does not support the ALJ's finding that Ms. Morrison's impairments do not meet or equal a listing. Dkt. 18 at 19. However, she fails to develop this argument and instead makes only the conclusory assertion that the ALJ did not properly consider the combined effects of her physical and mental impairments. The Court may deem arguments that are unsupported by explanation to be waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation

in support of claim of error waives issue)).  The Court declines to address this argument.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should (1) determine whether Ms. Morrison's work as a telephone solicitor qualifies as past relevant work, (2) reevaluate Ms. Morrison's residual functional capacity, making specific findings as to how long Ms. Morrison must stand and move before returning to sitting and how she is to continue working while standing, and (3) redo steps four and five, relying on the testimony of a vocational expert as necessary and explaining in her decision how she resolves any conflicts between the vocational expert's testimony and the DOT.

Objections, if any to this Report and Recommendation must be filed and served no later than **February 27, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **March 2, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Responses to objections must be filed no later than 14 days after being served with objections.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 13th day of February, 2012.

BRIAN A. TSUCHIDA  
United States Magistrate Judge